Dickson, J.
During the years 1887, 1888 and 1889, certain individuals acquired interests in certain lands in Hamilton county, Ohio, adjacent to the city of Cincinnati. During this time these individuals advanced money to buy these lands. Sometime during the year 1889, the following Hyde Park Syndicate agreement was entered into:
"We, James E. Mooney, T. B. Youtsey, A. S. Berry, Charles H. Kilgour, John Kilgour,-John Zumstein and Wallace Burch, severally agree to and with each other, each in consideration of the agreements of the others as follows:
"First. To form a syndicate to purchase such real estate as may be determined upon by tw-o-thirds of the shareholders herein.
"Second. The number of shares shall be limited to six, five whole shares and two one-half shares, distributed as follows: to James E. Mooney, one share; T. B. Youtsey, one share; A. S. Berry, one share; Charles H. Kilgour, one share; John Kilgour, one share; John Zumstein, one-half share; Wallace Burch, one-half share.
"Third. The shareholders, other than Wallace Burch, shall pay their proportional part of the money to be advanced for said one-half share held by him. The said Wallace Burch shall not be paid any of the proceeds of the sale of said real estate, until the sum advanced for the purchase thereof, together with all interest and other costs, shall have first been repaid to the said shareholders advancing the same out of the sales of the lands purchased under this agreement. The said Wallace Burch in consideration of the profits in said one-twelfth interest is to devote such time and attention as may be necessary to purchase the real estate hereunder. And by the direction of the officers of said syndicate, is to attend generally to all matters that may be necessary to carry out this agreement.
*387 “Fourth. The title of all real estate purchased shall be conveyed to James E. Mooney, trustee, who shall hold the same in trust for the shareholders hereof, in accordance with this agreement, and make such disposition of the same as may be directed from time to time by two-thirds of the said shareholders herein. Said trustee shall receive one ($1) dollar for his services.
‘ ‘ Fifth. The said shareholders shall elect from their number, a president, treasurer, and such other officers as they may deem necessary. The compensation of said officers, for each, shall be one ($1) dollar per year.
“Sixth. Promptly upon being notified so to do, each shareholder shall pay to the treasurer his proportional share of such sums of money as may be required to make the purchase of the real estate as aforesaid.
“Seventh. It is agreed that the death of any shareholder herein shall not determine this agreement. And each of said shareholders agrees that in the event of his death prior to the determination of this agreement, his share shall pass to his exeeu-, tors or other legal representatives, who shall carry out in his stead, the purposes of this agreement, to all intents and purposes, the same as if he had not deceased.
“Eighth. This agreement to date from'the 30th day of June, 1887, and to cover the purchases of all real estate made since said date. “Jambs E. Mooney,
“T. B. Youtsey,
“A. S. Berry,
“C. H. Kilgour,
“John Kilgour,
“John Zumstein,
“Wallace Burch.”
About the time this agreement was made there had been purchased about one hundred and fifty acres of land known as Hyde Park. About one hundred and fifty thousand ($150,000) dollars, partly cash and partly in deferred payments secured by mortgages on the land, were paid for the lands. The title to all or nearly all of this land at one time had been taken in the name of Wallace Burch, a member of the syndicate. In due course of time the title to all of this land was conveyed to James E. Mooney, trustee, a member of the syndicate. These deeds to Mooney, trustee, are silent as to his powers.
The purpose of the formation of this syndicate, as appears from the agreement above, would indicate that the only object *388 was “to purchase such real estate as may be determined upon * * * and make such distribution of the same as he ” (Mooney, trustee) “may be directed from time to time.” * * *
In time this land was developed and improved by the syndicate, either by the direct orders of its members or by their acquiescence. In the purchase and development of these lands about two hundred and ten thousand ($210,000) dollars was expended. Since the organization of the syndicate certain changes in its membership have occurred. Messrs. Berry, C. H. Kilgour and John Zumstein have died and their legal representatives have taken their places. Thomas B. Youtsey made an assignment to Charles W. Nagel, assignee.
By proceedings had in the Court of Common Pleas of Hamilton County, Ohio, the Franklin Bank recovered a judgment against Youtsey, a member of the syndicate. A short time thereafter Youtsey executed and delivered a deed of assignment to Charles W. Nagel. Other actions were brought, and other judgments were rendered, against Youtsey. Various additional parties with claims against Youtsey either entered or were brought into these actions. Various appellate proceedings were had in the Circuit Court of Hamilton County, Ohio, and in the Supreme Court of Ohio. ’ All these proceedings were ended by and in a final decree in the Circuit Court of Hamilton County, in which it was held that the Franklin Bank’s claim against Youtsey was after certain legal charges the first lien against certain definite property rights owned by Youtsey; that the claim of Nagel, assignee of Youtsey, was the next lien against these same property rights, and that no other party had any right therein. At the beginning of the action by the bank, levy had been made in attachment upon Youtsey’s certain undivided one-sixth interest in certain specific parcels of land, described either by lot numbers or by metes and bounds. The attachment was sustained. The final entry in the circuit court contained, among other findings, the following:
“® * * It is further ordered that the said sheriff convey to the purchaser, Henry Burkhold, by deed according to law, the property so sold, being the undivided one-sixth of all the premises in the petition described and being the interest of the de *389 fendant, the said Thomas B. Youtsey, in said premises in the petition described, to-wit: the undivided one-sixth of each and every piece therein described and no more, and the said purchaser is hereby subrogated to all rights, claims and liens of every kind whatsoever of all the parties to this action in said premises, and a writ of possession is awarded to put said purchaser in possession of said premises.” * * *
The sheriff of Hamilton county, Ohio, in compliance with this order, after unsuccessfully asking for separate bids on each parcel of land, made a sale to Henry B. Burkhold at his bid, for the sum of $26,110 cash, and upon the payment thereof, delivered to Burkhold a deed in accord with the terms of the decree, .and out of the proceeds of the sale paid the bank’s claim and paid a small balance to Nagel, assignee.
All the money, $209,199.66, advanced to purchase and improve the land has been repaid and in addition thereto there was credited as interest to the various parties on February 1, 1908, the following amounts:
James E. Mooney...................... $35,025.70
Henry B. Burkhold (Youtsey’s Int.) ____ 35,025.70
Albert S. Berry Estate ................ 35,025.70
Chas. H. Kilgour Estate ............... 35,025.70
John Kilgour ...................... 35,025.70
John Zumstein Estate.................. 17,512.85
Total .................. $192,641.35
On these amounts credited there has been paid up to and including June 1st, 1909, the following:
James E. Mooney ...................... $16,375.70
Henry B. Burkhold (Youtsey’s Int.) ...... 16,375.70
Albert S. Berry Estate.................. 16,375.70
Chas. H. Kilgour Estate ................ 16,375.70
John Kilgour ......................... 16,375.70
John Zumstein Estate ................. 8,187.85
Total..................$90,066.35
The assets of the syndicate now are about $120,000, including everything. Three parties in this action ask for relief.
Nagel, as assignee, claims that he owns all of the interest in the syndicate formerly owned by Youtsey, except what was sold *390 to Burkhold; claims that Burkhold did not purchase at the judicial' sale all of Youtsey’s interest or ownership in the entire syndicate, but only Youtsey’s interest in the property sold; claims that the value of such interest depended upon the payment of the debts of the concern and Youtsey’s undivided interest in the concern, all .ascertained only by an accounting.
Second. Mooney, trustee, after reciting that since the judicial sale he has treated Burkhold as the sole owner of the entire interest of Youtsey in the syndicate, states that Nagel, assignee, claims he had done wrong in this respect, and now asks the advice and instruction of this court as to his rights and duties in the premises.
Third. Burch asks a construction of the syndicate agreement, for an accounting, and an award to him out of the profits earned .in said syndicate of any amount due him; and claiming that profits were earned after the repayment of all moneys expended for all purposes.
The members of the syndicate, except Burch, advanced all the money required by the syndicate in the purchase and development and marketing of the real estate owned by the syndicate. This was done in accord with the agreement and in accord with the consents of all the members, including Burch. Burch agreed to furnish such time and such skill as required. There is no claim that he has not fulfilled his part of the contract. He was recognized as one of the members of the syndicate—was treated as such and was on many important committees. The money thus advanced and the time thus spent together with the skill thus employed, constituted the capital of the concern. The syndicate agreement, though providing against the death of one or more of its members, made no provision against the insolvencey or the assignment of any one of its members.
The levy of attachment was made upon the undivided one-sixth interest of Youtsey in certain two hundred or more parcels of land, particularly described by lot numbers in certain subdivisions, or by metes and bounds, and being all the land charged on the regular tax duplicate against the syndicate at the time of the levy. By due course of law the one-sixth interest of Youtsey in these certain parcels of land was ordered sold to pay the *391 judgment against Youtsey. A one-sixth part of each parcel of land was appraised separately. The one-sixth part of each parcel of land thus appraised was offered for sale by the sheriff separately. There being no bidders for each separate parcel, all the one-sixth interest of Youtsey in all the separate parcels of land was sold to Burkhold and a. deed given to him therefor.
What did Burkhold buy at this sheriff’s sale?
The court is of the opinion that Burkhold purchased only Youtsey’s undivided one-sixth interest in the parcels of land sold and no more. He did not at that sale purchase Youtsey’s undivided one-sixth interest in the entire syndicate property, which syndicate property at that time consisted of lands attached and not attached, mortgage notes secured by mortgage, leasehold estates, cash and other choses in action. Suppose each one of the two hundred or more parcels of land had been sold to two hundred or more different bidders. Certainly each one of these two hundred or more purchasers could not have bought the entire undivided one-sixth interest of Youtsey in the entire property of the syndicate. The sheriff caused to be appraised Youtsey’s undivided one-sixth interest in these lands as a co-parcener or tenant in common. The true value of Youtsey’s undivided one-sixth interest in these parcels of land could only have been ascertained by an accounting. There has been no accounting, before or since the sale. Such a purchase at such a sale may be worth much or worth less than nothing. An accounting should have been had before the appraisements were made. Such a sale smacks of the grab bag or the lottery and is not right. Burk-hold was the agent of the Franklin Bank in its action against Youtsey. He signed the petition and swore to the affidavit in attachment.
It is true any one interested, including Mooney, trustee, Nagel, assignee, and Burkhold, could have had an accounting and ascertained the true value of the property sold, yet the fact remains that there was no accounting had. Burkhold bought only what was offered for sale and sold—no more, no less.
After his purchase of Youtsey’s interest in these parcels of land, Burkhold was treated by Mooney, trustee, as the sole owner of all interest of Youtsey in the entire syndicate property.
*392 It is claimed that by the assignment of Youtsey to Nagel the syndicate was dissolved. Such is the general rule of law, but the court is of the opinion that the assignment of Youtsey did not here work a dissolution. From the very beginning of°the syndicate Mooney was the trustee and, as such, trustee of all its members and their personal representatives in case of death. He as trustee owned all of its assets. Burkhold, together with his wife, declared by deed that Mooney was the trustee of all, including himself. There has at no time been a relinquishment -of this trusteeship by Mooney. Mooney has at all times and on all occasions accepted the trust and asserted rights thereunder. He thus acts in this action. He has never rendered an accounting of his trust. There never has been any revocation of the trust by any of its members, or by Mooney as trustee.
The court is of the opinion that the assets of the Hyde Park Syndicate have at all times been and now are in the possession of Mooney as trustee.
While acting as such trustee, Mooney has repaid all the money advanced by the members of the syndicate. Also between April 1st, 1908, and June 1st, 1909, he has disbursed on the interest account $90,066.35 (supra).
He paid nothing to Burch or Nagel, assignee. At no time did Mooney, as trustee or otherwise, or any one for him, render any account to Nagel, assignee, or Burch. At no time did he as trustee or otherwise, or any one for him, notify Nagel, assignee, or Burch that he was paying the above interest amounts. Neither Nagel, assignee, nor Burch, at any time before this suit was brought, know that these interest amounts had been credited or paid. Both Nagel, assignee, and Burch were entitled to such notice. It was Mooney’s duty as trustee to so notify these people. Mooney as trustee had no right to pay to Burkhold the interest he did pay to him.
A trustee acts at his peril. At any time and at all times it is the duty of a trustee to ask the aid of the courts ‘ ‘ in any matter respecting the trust estate or property to be administered, and the rights of the parties in interest.” All persons having the money of others in their hands to distribute must see to it that such money reaches the proper hands. If a mistake be *393 made, such persons will be required to pay it a second time or oftener until it reaches the proper person. Mooney, now too late as to the past, seeks this aid in this court.
The uttering of the two deeds further strengthens the court’s opinion that the trust in Mooney was and is a continuing and subsisting trust.
The court is of the opinion that the recording of the second trust declaration, in which Burkhold joined, does not militate against the claims of Nagel, assignee. This deed was not notice to Nagel, assignee, of any matter contained therein and the recording of the same is in no way binding upon him. Nagel as assignee had a right to trust that Mooney as trustee would legally administer his trust, and in the absence of express notice and laches thereafter, no error committed against him by his trustee is binding' upon him.
The court is of the opinion that this trust in question is now, and has been since its beginning, a continuing and subsisting trust and that no statutes of limitation apply, and that Mooney as trustee must recast his accounts.
As to the claim of Burch the syndicate agreement provides :
“Third. The shareholders other than Wallace Burch shall each pay their, proportional part of the money to be advanced for said one-half share held by him. The said Wallace Burch shall not be paid any of the proceeds of the sale of said real estate until the sum advanced for the purchase thereof, together with all interest and other costs, shall have first been repaid to the said shareholders advancing the same, out of the sales of the lands purchased under this agreement. The said Wallace Burch in consideration of the profits in said one-twelfth interest. ” * * *
As stated above, six of the members of the syndicate were to furnish all the money, the seventh was to employ time and skill. Each member performed his task. When was Burch to share in the profits? What is meant by the word “profits” as used in this agreement interpreted by the light shed by a considera.tion of the whole contract and by the undisputed facts as to its subject-matter known at its inception? The fact that Burch was to contribute no money can not be construed against him. His contribution to the capital was to be time and skill. The fact that the other members contributed and paid the money *394 part of Mr. Burch’s share, as detailed in the agreement, is not against Burch. The details of the manner of the advancing of the money part of the capital means simply that all the members except Mr. Burch were to contribute all the money and he none.o In adventures of this kind and in all adventures requiring capital, before a dissolution, the money and any other matters contributed by the adventurers for the purposes of'the agreement are not to be repaid and are called capital. All issues arising therefrom are called “profits”—accretions to capital. Ail losses arising therefrom are called shrinkage or depreciation in the capital. Such is the rule of law, but persons may agree otherwise, as here in this agreement, money advanced to be repaid first. But any exception must be clear, definite and certain. All the money advanced is to be repaid. This exception to the rule obtains.
We come now to the expression “together with all interest and other costs” to be repaid.
What is meant by ‘ ‘ all interest and other costs * * * repaid?” This is not clear, definite and certain, when the subject-matter of the agreement is considered. It is not disputed that there was paid out for the lands purchased “sums” of money; also interest on deferred payments; also interest on borrowed money; also other expenses, such as surveyor, etc., i. e., ‘ ‘ costs, ’ ’ expenses. The word 1 ‘ interest ’• ’ is followed by “* * * other costs” and joined to “costs” by the word “and.”
Mooney claims that this word “interest” means interest on the money advanced. He says he has acted upon this theory. John Kilgour and the estate of Charles- H. Kilgour agree with Burch that profits began as soon as all moneys advanced for any and all purposes were repaid. If the agreement had been that Burch was to be paid out of the profits and nothing else said on this subject, profits would have been earned before any capital had been repaid.
Part of the subject-matter in hand at the time of the making of the syndicate agreement was repayment of moneys which had already been advanced and which were to be advanced, ¿ e., purchase money, interest on deferred payments, and costs.
The minds of the members of the syndicate had met as to the moneys expended and to be expended all in manner as above, *395 and as to the fact that the same were to be repaid. From the wording of the syndicate agreement it is not clear, definite and certain that the minds of its members met on the question of being paid interest on moneys advanced and expended, and to be advanced and expended. There can be no agreement without a meeting of the minds. In the absence of such a meeting both as to the entire, or any part of, the agreement the general rule of law above referred to must obtain, and the conclusion is irresistible that any interest on such moneys advanced -and to be advanced was not to be paid, rather, not to be repaid. There has been no repayment of interest. There has been payment of interest.
'filie court is of the opinion that profits began after all the moneys paid out for any purpose had been repaid. Some time after the agreement had been made, a deed or declaration of trust was recorded. The evident purpose of this deed was to ratify the acts of Mooney done as trustee and to declare that all purchasers would not be required to look to ithe applications of proceeds from sales, past and future.
Again after the Burkhold sheriff’s sale (supra), a second deed or declaration of trust, signed by Burkhold and wife, was recorded of the same effect and for the same end and purpose of the first deed of declaration. In each deed Mooney was trustee. For some reason, not apparent, Burch did not join in either of these deeds, but did act as a notary public in taking the acknowledgments in both. Such conduct of Burch in no way-militates against any part of.this opinion, either as to Burch’s rights as defined herein, or as to the rights, as defined herein, of any of the parties to this action.
The court .is of the opinion that under the syndicate agreement profits were earned after all these moneys advanced for all purposes had been repaid and that Burch is entitled to share in such profits.
The court will order a recasting of the accounts by the trustee in accord with this opinion and that he shall credit the parties in the syndicate, in manner as follows: James E. Mooney, one share; Henry B. Burkhold, what he bought as defined in this opinion; Charles W. Nagel, assignee, the balance (Youtsey’s interest), one share; Albert S. Berry Estate, one share; Chas. H. *396 Kilgour Estate, one share; John Kilgour, one share; John Zumstein Estate, one-half share; Wallace Burch, one-half share.
The court suggests that the parties interested have the account of the syndicate recast in accord with this opinion, and as of date January 1st, 1910, in order that the exact figures as of that date may be a part of the decree. In the event that this request be not complied with on or before February 15, 1910, the court will send so much of this case to a referee as may be necessary to obtain such a recasting.